IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| **MONOGRAM MEAT SNACKS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action No.  2:12-cv-3056 |
| | ) | |
| v. | ) | **JURY DEMAND** |
| | ) | |
| **T & L DISTRIBUTING, INC. d/b/a** | ) | |
| **BLACKBEARD'S BEEF JERKY and** | ) | |
| **PONY EXPRESS FOODS, LLC d/b/a** | ) | |
| **BLACKBEARD'S BEEF JERKY,** | ) | |
| | | |
| **Defendants.** | | |

___

## COMPLAINT
___

Plaintiff Monogram Meat Snacks, LLC, Inc. for its Complaint against Defendants T&L Distributing, Inc. doing business as Blackbeard's Beef Jerky and Pony Express Foods, LLC doing business as Blackbeard's Beef Jerky states as follows:

### I.  PARTIES

1. Plaintiff Monogram Meat Snacks, LLC ("Plaintiff") is a Tennessee limited liability company with its principal place of business at 930 South White Station, Memphis, Tennessee 38117.

2. Upon information and belief, Defendant T&L Distributing, Inc. doing business as T&L Distributing Co., Inc. and T&L Distributors ("T&L") is a Pennsylvania corporation with a principal place of business located at 529 Cherryville Road, Northhampton, PA 18067.  T&L is the owner of the registration in the domain name www.blackbeardbeefjerky.com.  Upon information and belief, T&L and Co-defendant Pony Express Foods, LLC together do business as BlackBeard's Beef Jerky.

3. Upon information and belief, Defendant Pony Express Foods, LLC ("Pony Express") is a Pennsylvania limited liability company with a principal place of business located at 1016 West Main Street, Blue Ball, Pennsylvania 17506.  Pony Express is the owner and/or operator of an interactive website located at the domain name www.ponyexpressfoods.com.  Upon information and belief, T & L and Pony Express Foods together do business as BlackBeard's Beef Jerky.

4. Defendants T & L and Pony Express shall hereinafter be collectively referred to as "Defendants."

## II.  JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) cause this case arises under the Trademark Laws of the United States, 15 U.S.C. §§ 1051, *et seq*.

6. This Court has subject matter jurisdiction under the provisions of 28 U.S.C. § 1338(b) for the unfair competition claims because those claims are joined with a substantial and related claim under the Trademark Laws of the United States, 15 U.S.C. §§ 1051, *et seq*.

7. This Court has subject matter jurisdiction of all claims herein arising under state law pursuant to 28 U.S.C. § 1367.

8. Venue is proper under 28 U.S.C. §§ 1391(b) and (c), and 28 U.S.C. § 1395.

9. Upon information and belief, this Court has general personal jurisdiction over Defendants based upon Defendants' continuous and systematic minimum contacts with residents of Tennessee through the offering of their services and/or products in Tennessee directly or via the internet.  On their website located at the domain name www.blackbeardbeefjerky.com, Defendants advertise and offer direct sales through online purchase of products and specifically

the products at issue in this action.  A true and correct copy of an exemplary page showing Defendants' website's "shop" feature are attached hereto as **Exhibit 1**.

10. Upon information and belief, this Court also has specific personal jurisdiction over Defendants based on their purposeful direction of its promotional and advertising activities and sales and offers for sale of their products to residents of and customers in Tennessee.

11. Further, this Court has personal jurisdiction under Tenn. Code Ann. § 20-2-201 *et seq*., because (1) Defendants have transacted business in Tennessee; (2) the tortious acts or omissions occurred in Tennessee; (3) the damages occurred in Tennessee; and (4) jurisdiction based on Defendants' contacts with Tennessee is not inconsistent with the Constitution of the State of Tennessee or the Constitution of the United States.

### III.  FACTS COMMON TO ALL CAUSES OF ACTION

#### A.  Plaintiff's Distinctive Trade Dress

12. Beef jerky is the delicious nutritious snack that originated in the days when meats were cured and smoked due to issues with preservation. It still continues to be enjoyed for its delicious flavor and hunger-satisfying characteristics.

13. Plaintiff offers beef jerky and other meat snacks under the Wild Bill's brand.

14. The Wild Bill's brand traces its roots back to approximately 1955 in Lancaster County, Pennsylvania.  Balwell's Butcher Shop served only the finest and freshest meats in the heart of Dutch Country.  Over several decades, Balwell's developed a reputation as a company that served excellent products with friendly service.  Balwell's was very successful in the local marketplace.

15. In or around1983, Balwell's began making premium beef jerky and meat snacks - the best beef jerky and meat snacks that money could buy.   Approximately, five years later, the company changed its name to Wild Bill's Foods, Inc.  What began as a local marketplace

3

favorite grew and Wild Bill's Foods developed a reputation in the meat snack industry for producing products that even the most discriminating meat snack connoisseurs could appreciate and enjoy.

16. Plaintiff purchased Wild Bill's Foods in 2009. Plaintiff, a subsidiary of Monogram Food Solutions, LLC, one of the nation's leading manufacturers of branded, licensed, private labeled, and co-packed meat snacks in the U.S. meat industry, remains committed to the original Wild Bill's brand - quality beef and pork, marinated in rich seasoning, then hand strung and smoked in a real smokehouse. Plaintiff continues the tradition by producing the best products and providing outstanding customer service.

17. Plaintiff continues to distribute the Wild Bill's brand nationally including, but not limited to, in Tennessee.

18. Plaintiff is the owner via assignment from Wild Bill's Foods, Inc. of all of Wild Bill's Foods' trademarks, services marks, trade dresses, and other source identifying intellectual property holdings. Through such assignment, Plaintiff is the owner of U.S. Trademark Registration No. 3,177,093 for the trademark "WILD BILL'S" for use in connection with dried meat snacks, namely, beef jerky and ham sticks.

19. Monogram Meat Snacks, LLC also is the owner via assignment of U.S. Trademark Registration No. 2,184,178 for the Wild Bill image in connection with meat products, namely beef jerky and ham sticks:



20. In addition to the WILD BILL'S and Wild Bill image trademarks, since at least as early as 2000, Plaintiff has used and continues to use on its product packaging a distinctive font in white outline with red fill for its "WILD BILL'S" trademark above its Wild Bill image. Plaintiff uses the same font for the words to describe the particular product on its packaging for example "Beef Jerky" and/or "Hickory Smoked."

21. For Plaintiff's hickory smoked beef jerky products, Plaintiff uses a distinctive black-colored package with the aforementioned font in white outline with red fill for its "WILD BILL'S" trademark above its Wild Bill image and that same font for the words "Beef Jerky" and "Hickory Smoked." The distinctive use of the color black in combination with font, coloring, and words shall herein after be referred to as "Plaintiff's Hickory Smoked Trade Dress."

22. A true and correct picture of an example of Plaintiff's Hickory Smoked Trade Dress is attached hereto as **Exhibit 2**.

23. Plaintiff has used Plaintiff's Hickory Smoked Trade Dress for many years prior to the filing of this Complaint and more importantly, many years prior to the wrongful actions undertaken by Defendants as set out herein.

24. Plaintiff has acquired and established through exclusive continuous, long-term use in interstate commerce a substantial level of source identifying capability, *i.e.*, secondary meaning, that has led consumers to identify and associate Plaintiff with Plaintiff's Hickory Smoke Trade Dress.

25. Plaintiff's Hickory Smoke Trade Dress has been widely promoted in traditional "brick-and-mortar" stores and on the internet.

26. As a result of the long and exclusive use by Plaintiff of Plaintiff's Hickory Smoked Trade Dress, the large number of sales of products bearing Plaintiff's Hickory Smoked Trade Dress, and the large amount of money spent by Plaintiff for advertising and promotion of

its products, Plaintiff's Hickory Smoked Trade Dress has become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a designation of source, origin, and quality of the products sold under Plaintiff's Hickory Smoked Trade Dress.

27. Plaintiff and its use of Plaintiff's Hickory Smoked Trade Dress are well-known in the industry and with consumers.

### B. Defendants' Wrongful Conduct

28. T&L is a full service snack food distribution company.

29. Until December 2011, T&L distributed Plaintiff's Wild Bill's brand of beef jerky.

30. T&L no longer distributes Wild Bill's brand of beef jerky.

31. Defendant T&L currently distributes the Blackbeard's brand of beef jerky.

32. Upon information and belief, T&L manufactures and distributes the Blackbeard's brand products through a relationship of the Blackbeard's brand with Pony Express operating as the co-packer of Blackbeard's beef jerky.

33. Pony Express is very much aware of the Wild Bill's brand generally, and Plaintiff's Hickory Smoked Trade Dress specifically, because Pony Express currently employs Ted Cundiff, who was President of Wild Bill's from 1997 until approximately 2007.

34. Upon information and belief, T&L, in cooperation with Pony Express, began distributing a hickory smoked version of the Blackbeard's brand beef jerky products in late 2012.

35. On the website for Blackbeard's Beef Jerky located at the domain name www.blackbeardbeefjerky.com, it uses the word "NEW" next to the link to its hickory smoked beef jerky.

36. Defendants' hickory smoked beef jerky is sold in a black-colored package with a font in white outline with red fill for the word "BLACKBEARD'S" above an image of a bearded man and that same font with the words "Beef Jerky" and "Hickory Smoked."

6

37. This packaging shall hereinafter be referred to as the "Infringing Packaging."

38. A true and correct picture of an example of the Infringing Packaging is shown on **Exhibit 1** attached hereto.

39. Defendants' Blackbeard's branded non-hickory-smoked products do not have a black-colored package with a font in white outline with red fill for its "BLACKBEARD'S" above an image of a bearded man and that same font with the words "Beef Jerky." A collection of true and correct pictures from Defendants' website is attached hereto as **Exhibits 3, 4, 5 and 6**.

40. Both Plaintiff's Hickory Smoked Trade Dress and the Infringing Packaging use black as the background color for their respective packaging.

41. Both Plaintiff's Hickory Smoked Trade Dress and the Infringing Packaging use the same or nearly identical font in white outline with red fill for the words "Wild Bill's" in Plaintiff's Hickory Smoked Trade Dress and "Blackbeard's" in the Infringing Packaging.

42. Both Plaintiff's Hickory Smoked Trade Dress and the Infringing Packaging use the same or nearly identical font with white fill for the words "Beef Jerky."

43. Both Plaintiff's Hickory Smoked Trade Dress and the Infringing Packaging use the same or nearly identical font for the words "Hickory Smoked."

44. Plaintiff began using Plaintiff's Hickory Smoked Trade Dress several years prior to Defendants' began using the Infringing Packaging.

45. Defendants' use of the Infringing Packaging is without Plaintiff's permission or authority and is likely to cause or has already caused confusion, mistake, and deception among consumers between source, origin, and quality of Plaintiff's products sold in Plaintiff's Hickory Smoked Trade Dress and Defendant's products sold in the Infringing Packaging.

46. Given Plaintiff's well-known status in the beef jerky market, and Defendants' history with Plaintiff and Plaintiff's Hickory Smoked Trade Dress, Defendants' selection and use of the Infringing Packaging with the sale and offering of their goods demonstrate the willful intent and purpose of improperly taking or benefiting from the favorable reputation and valuable goodwill which Plaintiff has established in Plaintiff's Hickory Smoked Trade Dress.

47. Defendants' use of the Infringing Packaging has caused their goods to be passed off as made, authorized, sponsored, or endorsed by or otherwise connected to Plaintiff.

48. Plaintiff has been seriously damaged by Defendants' activities complained of herein, and unless such activities are preliminarily and permanently enjoined, Plaintiff and its goodwill and reputation will suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated or compensated in money damages.

## IV. CAUSES OF ACTION

### COUNT 1
### TRADE DRESS INFRINGEMENT

49. Plaintiff incorporates Sections I, II, and III as though fully set forth herein.

50. Defendants have infringed Plaintiff's Hickory Smoked Trade Dress in interstate commerce by various acts, including, without limitation, selling, offering for sale, promoting and advertising of products using the Infringing Packaging that is confusingly similar to Plaintiff's Hickory Smoked Trade Dress.

51. Defendants' use of the Infringing Packaging is without Plaintiff's permission or authority and is likely, if it has not done so already, to cause confusion, to cause mistake and /or to deceive the purchasing public.

52. Defendants have used the Infringing Packaging notwithstanding Plaintiff's well-known and prior established rights in Plaintiff's Hickory Smoked Trade Dress.

53. Defendants' conduct constitutes infringement of Plaintiff's Hickory Smoked Trade Dress in violation of §43(a) of the Lanham Act, 15 U.S.C. § 1125.

54. Defendants' infringing conduct has been and continues to be deliberate and willful and committed with the intent to cause confusion and mistake in the marketplace and to deceive the public.

55. Upon information and belief, Defendants' infringing activities have caused and, unless enjoined by this Court, will continue to cause irreparable injury and other damage to Plaintiff's business, reputation and goodwill in Plaintiff's Hickory Smoked Trade Dress, for which Plaintiff has no adequate remedy at law.

56. Defendants' conduct renders this case an exceptional case entitling Plaintiff to its reasonable attorney fees and expenses.

57. Plaintiff is entitled to all available remedies provided by 15 U.S.C. §§ 1114, 1117 and 1118, including preliminary and permanent injunctive relief and damages, Defendants' profits, treble damages, reasonable attorney fees, expenses, and costs.

## COUNT 2
## FALSE DESIGNATION OF ORIGIN AND FALSE DESCRIPTION

58. Plaintiff incorporates Sections I, II, and III as though fully set forth herein.

59. Defendants' unauthorized use in commerce of the Infringing Packaging that is confusingly similar to Plaintiff's Hickory Smoked Trade Dress falsely designates the origin or association of Defendants' Infringing Packaging with Plaintiff. Such use is intended to and will inevitably cause consumer confusion or mistake and will deceive the consuming public into believing that there exists an affiliation, connection or association between Defendants and Plaintiff as to the origin, sponsorship, or approval of the products in the Infringing Packaging. Such use constitutes unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. §1125.

60. Defendants' wrongful activities have caused, and unless enjoined by this Court, will continue to cause irreparable injury and other damage to Plaintiff's business, reputation and goodwill in Plaintiff's Hickory Smoked Trade Dress, for which Plaintiff has no adequate remedy at law.

61. Defendants' conduct renders this case an exceptional case entitling Plaintiff to its reasonable attorney fees and expenses.

62. Defendants' unlawful conduct has been deliberate and willful and Plaintiff is entitled to all available remedies provided by 15 U.S.C. §§ 1114, 1117 and 1118, including preliminary and permanent injunctive relief and damages, Defendant's profits, treble damages, reasonable attorney fees, expenses, and costs.

## COUNT 3
## FEDERAL UNFAIR COMPETITION

63. Plaintiff incorporates Sections I, II, and III as though fully set forth herein.

64. Defendants have used and continue to use packaging which is confusingly similar to Plaintiff's Hickory Smoked Trade Dress with the intent to deceive the public into believing that goods offered or sold by Defendants are made by, approved by, sponsored by, or affiliated with Plaintiff.

65. Defendants' acts as alleged herein were committed with the intent to pass off Defendants' goods as the goods of Plaintiff or in some way affiliated with or originating from Plaintiff, and with the intent to deceive and defraud the public.

66. Defendants' acts constitute unfair competition and passing off, and have caused Plaintiff damages, including, without limitation, lost profits, harm to reputation, and costs to remediate the confusion and harm to Plaintiff's goodwill and reputation caused by Defendants.

67. Defendants' acts constitute violations of 15 U.S.C. § 1125.

68.     Defendants' wrongful activities have caused, and unless enjoined by this Court, will continue to cause irreparable injury and other damage to Plaintiff's business, reputation and goodwill in Plaintiff's Hickory Smoked Trade Dress, for which Plaintiff has no adequate remedy at law.

69.     Defendants' conduct renders this case an exceptional case entitling Plaintiff to its reasonable attorney fees and expenses.

70.     Defendants' unlawful conduct has been deliberate and willful and Plaintiff is entitled to all available remedies provided by 15 U.S.C. §§ 1114, 1117 and 1118, including preliminary and permanent injunctive relief and damages, Defendant's profits, treble damages, reasonable attorney fees, expenses, and costs.

## COUNT 4
## VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

71.     Plaintiff incorporates Sections I, II, and III as though fully set forth herein.

72.     Defendants' willful and knowing acts, including their intentional use of packaging that is confusingly similar to Plaintiff's Hickory Smoked Trade Dress, constitute unfair methods of competition and unfair or deceptive acts or practices in violation of Sections 47-18-104(b)(1), (2), (3), and (5) of the Tennessee Code.  Plaintiff has suffered injury as a result of Defendants' unfair, deceptive, and misleading acts.

73.     Defendants' acts, including their use of fonts, colors, and images that are nearly identical to Plaintiff's long-established packaging, were known by Defendants to be deceptive and misleading, or through the exercise of reasonable care or investigation could or might have been ascertained to be deceptive and misleading.

74.     Plaintiff is entitled to injunctive relief and all other available statutory remedies, including an award of three times the actual damages sustained under Section 47-18-109(a) of the Tennessee Code, and reasonable attorney fees, expenses, and costs.

75. Further, Plaintiff is entitled to injunctive relief against Defendants to stop the wrongful and illegal conduct that has caused and continues to cause irreparable harm to Plaintiff.

## COUNT 5
## COMMON LAW UNFAIR COMPETITION

76. Plaintiff incorporates Sections I, II, and III as though fully set forth herein.

77. Defendants are liable to Plaintiff for unfair competition under Tennessee law, because Defendants' conduct is tortious and has deprived Plaintiff of customers and other prospects.

78. Defendants' acts of unfair competition have caused Plaintiff damages, and Plaintiff seeks judgment for Defendants' profits made by Defendants' unfair competition and/or passing off of Plaintiff's goods, for the damages sustained by Plaintiff, for all costs necessary to remediate the unfair competition and passing off and their effects, and for the costs incurred in bringing the present action.

79. Plaintiff further seeks judgment for punitive damages of at least three times the amount of Defendants' profits or Plaintiff's damages, whichever is greater, due to the nature of Defendants' conduct.

80. Further, Plaintiff is entitled to injunctive relief against Defendants to stop the illegal conduct and the irreparable harm that it has caused and continues to cause.

## COUNT 6
## UNJUST ENRICHMENT

81. Plaintiff incorporates Sections I, II, and III as though fully set forth herein.

82. Defendants are liable to Plaintiff for unjust enrichment under Tennessee law.

83. Defendants' acts have caused Plaintiff damages and unjustly enriched Defendants as hereinafter alleged.

## V.  ENTITLEMENT TO INJUNCTIVE RELIEF

84. Plaintiff incorporates Sections I, II, III, and IV as though fully set forth herein.

85. By reason of Defendants' acts alleged herein, Plaintiff has and will suffer immeasurable, and thus irreparable, damage to its business, reputation, and goodwill.

86. Upon information and belief, Defendants intend to continue to do the acts complained of herein unless restrained and enjoined.

87. Plaintiff's remedy at law is inadequate.

88. Plaintiff is entitled to an injunction prohibiting Defendants, and their affiliates, agents, servants, and employees, and anyone acting with their authority or on their behalf, from directly or indirectly using the Infringing Packaging or any variants thereof that are confusing similar to Plaintiff's Hickory Smoked Trade Dress.

89. Further, Plaintiff requests the Court order Defendants to recall of all products bearing the Infringing Packaging that have not been sold to the end consumers.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

1. The Court issue preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116, Tenn. Code Ann. § 47-25-513(a), and equity, enjoining and restraining Defendants, and their affiliates, agents, partners, servants, and employees, or anyone acting with their authority or on their behalf, from directly or indirectly using the Infringing Packaging or any variants thereof that are confusing similar to Plaintiff's Hickory Smoked Trade Dress;

2. Within five (5) days of issuance of preliminary and/or permanent injunctions, the Court order Defendants to file sworn statements under oath and subject to penalty of perjury that they have fully complied with the terms of the injunction(s).

3. The Court issue an order requiring Defendants to recall of all products bearing the Infringing Packaging that have not been sold to the end consumers;

4. The Court, pursuant to 15 U.S.C. § 1118, order that all packaging, labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession or under the control of Defendants that contain, use or apply the Infringing Packaging or any variants thereof that are confusing similar to Plaintiff's Hickory Smoked Trade Dress and all plates, molds, matrices, and other means of making the same, shall be delivered to Plaintiff and destroyed;

5. Defendants be required to account to Plaintiff for any and all benefits or profits derived by Defendants from the use the Infringing Packaging or any variants thereof that are confusing similar to Plaintiff's Hickory Smoked Trade Dress, including the sale of any and all products, and for all damages sustained by Plaintiff by reason of said acts of infringement, unfair competition, and/or other illegal acts complained of herein;

6. The Court award Plaintiff punitive and/or treble damages in an amount no less than three times the amount of Defendants' profits or Plaintiff's damages, whichever is greater, due to the willful, deliberate, intentional, and/or malicious nature of the actions;

7. Plaintiff be awarded its reasonable attorney fees due to the exceptional and willful nature of this case;

8. The costs of this action be awarded to Plaintiff; and

9. The Court grant such other and further relief as it shall deem just.

## VII. DEMAND FOR JURY TRIAL

Trial by jury is hereby demanded for all issues so triable.

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

s/ Samuel F. Miller
Samuel F. Miller (BPR No. 22936)
Maia T. Woodhouse (BPR No. 30438)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, Tennessee 37201
Telephone:  (615) 726-5594
Facsimile:   (615) 744-5594
Email: smiller@bakerdonelson.com

*Attorneys for Plaintiff*